UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

AISHIA PETERSEN,

    Plaintiff,

v.

IHG MANAGEMENT(MARYLAND) LLC.,

    Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

**COMES NOW**, Plaintiff Aishia Petersen ("Plaintiff "or "Petersen"), by and through undersigned counsel, files this Complaint and sues Defendant, IHG MANAGEMENT (MARYLAND) LLC. ("Defendant" or "IHG") for Permanent Injunctive Relief pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 U.S.C. §2201 and 2202, 28 CFR Part 36 Regulations, as well as Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794. Plaintiff state as follows:

**INTRODUCTION**

1. This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the Americans with Disabilities Act, (hereinafter, "ADA").

2. Plaintiff is a visually impaired and legally blind person (disabled) who requires assistance through screen-reading to navigate and communicate with business through the

internet and its innumerable applications using her browser in her mobile phone. Plaintiff uses the term "blind" or "visually impaired" as legally blind. Disable as defined by ADA and Amendment acts of 2008, 42 USC §12101 (ADAAA).

3.Plaintiff brings this action against Defendant for providing a digital business mobile application (running on mobile devices such as iPhone) that is not fully accessible usable by visually impaired consumers. The mobile application at issue is available to customers for download on customers mobile phones ("mobile app").

4. Defendant developed the mobile app and had an option during development to make fully accessible to screen-readers, but opted not to do so. Accessibility is an optional feature in mobile app development. iPhone (Apple) platform offers developers accessibility tools to aid them in creating an accessible user experience for all users, including those with a disability or impairment.

5. The Defendant distributes its mobile application to millions of customers through their phone in the App store for iPhones. Defendant offers its mobile app to the general public from which it shows it hotel locations and reservations. Consumers require the ability to make a reservation, even on the go. Defendant's mobile app allows mobile device users to shop on a mobile platform through an internet connection to Wi-Fi or cellular data so that users can make a reservation, locate hotels, and explore rooms offerings on the go.

6. Defendant has subjected itself to the ADA because Defendant's app is offered as a tool to communicate between the business and consumers to sell its products from its brick and mortar hotels, which are places of public accommodation. As a result, the app must interact with Defendant's hotels and the public, and in doing so must comply with the ADA,

which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

7. In the statutory text, Congress determined that "individuals with disabilities continually encounter various forms of discrimination," including "communication barriers". 42 U.S.C. § 12182(a).

8. Blind and visually impaired consumers must use the assistive technology on the mobile phone to access business mobile app content (VoiceOver or Talkback). The mobile app must be designed and programmed to work with the assistive Accessibility feature available on the Apple IPhones, and Android phone (Google and Samsung). Defendant's mobile application, however, contains digital barriers which limit the ability of blind and visually impaired consumers to access the mobile application connecting to reservations to physical hotels.

9. Defendant's mobile application is not fully or equally accessible to blind or visually impaired consumers in violation of the "ADA." As a result, Plaintiff seeks a permanent injunction to cause a change in IHG's policies, practices and procedures so that Defendant's mobile application will become, and remain, accessible to blind. Plaintiff seeks injunctive relief, attorneys' fees and costs, including, but not limited to, court costs and expert fees, pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA") and 42 U.S.C. 2000a-3(a). *See also* 28 U.S.C. 2201 and 2202 as well as ADA 28 CFR Part 36 Regulations.

10. Throughout the ADA, "auxiliary aids and services" refers to techniques and devices to overcome barriers in communicating with people who have visual and hearing impairments, among other things. See 42 U.S.C. 12103(1), See also ADA 28 CFR Part 36.

11. Implementing these provisions, see 42 U.S.C. § 12186(b), the Attorney General's Title III regulations require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations specifically list "screen reader software," "magnification software," and "accessible electronic and information technology" as among the auxiliary aids that the statute requires. 28 C.F.R. § 36.303(b)(2).

12. Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Defendant's failure to design, construct, maintain, and operate its mobile application to be fully and equally accessible to and independently usable by Plaintiff, constitutes in Defendant's denial of full and equal access to its mobile app connected communication tool to its stores, Therefore denial of its products and services offered thereby in conjunction with its physical location(s), resulting in a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

13. Defendant owns and operates the mobile e-commerce application and several IHG hotels that are located in Florida.

14. This case arises out of the fact that Defendant IHG has operated its business in a manner and way that effectively excluding individuals who are visually impaired from access to Defendant mobile application based upon Defendant's failure to provide auxiliary aids and services for effective communications.

15. Plaintiff seeks injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

16. Plaintiff, a legally blind person, is impeded to access and communicate with Defendant effectively and timely such that allowing access to Defendant's various business

locations; as such impediment as rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

17. Plaintiff has downloaded and attempted to patronize the Defendant's mobile application and physical stores in the past and intends to continue to make further attempts to patronize Defendant's mobile app and physical stores (making online reservations and purchase online to pick up at the store). Plaintiff would like to order Defendant's products and learn about sales or discounts before going to Defendant's brick and mortar location. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's app, Plaintiff will continue to be denied full and equal access to the app as described and will be deterred from fully using Defendant's app or shopping at the physical locations.

18. Plaintiff continues to attempt to utilize the Defendant's mobile app and plans to continue to attempt to utilize the application so Plaintiff can access the physical store in the near future and continues patronage.

19. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's mobile application. By continuing to operate its mobile app with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining an app with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

20. Plaintiff has suffered and will continue to suffer direct and indirect injury of fact as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the Title III of the ADA as well as 28 CFR Part 36 Regulations and the statutory protections of the Civil Rights.

**JURISDICTION AND VENUE**

21. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

22. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district where it has multiple physical locations.

23. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial district in which Defendant resides, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

24. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of Florida that caused injury, and violated rights prescribed by the ADA to Plaintiff. This Court has personal jurisdiction over IHG pursuant to, *inter alia*, Florida's long arm statute F.S. § 48.193, a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's mobile app in Florida. The access barriers Plaintiff encountered on Defendant's mobile app have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's mobile app. Plaintiff would like to become Defendant's patron and access the Defendant's mobile app in the near future but the

barriers Plaintiff encountered on Defendant's mobile app have impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's brick-and mortar hotels. Defendant IHG is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## PARTIES

25. Plaintiff, Aishia Petersen, is and, at all times relevant hereto, is an Orlando, Florida resident. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

26. Petersen is legally blind, and a member of a protected class under the ADA. Whereby, she has a disability within the meaning of 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff was diagnosed with congenital glaucoma in both eyes by UM Health- Bascom Palmer Eye Institute, and consequently, is legally blind and the visual disability is permanent. Plaintiff is a legally blind individual who has a physical impairment that substantially limits the major life activity of seeing. Accordingly, she has a disability within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 35.104. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2), 29 U.S. Code § 794 and 28 C.F.R. § 35.104.

27. Defendant IHG owns, operates and maintains multiple hotels called Holiday Inn, Intercontinental Hotels, Crowne Plaza, Hotel Indigo within the Southern District of Florida, either through franchisees, affiliates, partners or other entities. Defendant's IHG offers hotel rooms to the public. Defendant also offers those items to the public through its mobile app.

Defendant's hotels and accompanying mobile app work collectively and are public accommodations pursuant to 42 U.S.C. § 12181(7)(A).

## FACTS

28. Defendant is defined as a "Place of Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] hotel, motel, ," 42 U.S.C. §12181(7)(A) and 28 C.F.R. §36.104(5).

29. Each of Defendant IHG hotels' are open to the public and each is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as "[A] an Inn, hotel, motel…" as defined by 42 U.S.C. §12181(7)(A); §12182, and 28 C.F.R. Part 36.

30. IHG offers hotel rooms under Holiday Inn Express, Intercontinental Hotel, Six Senses Hotels, Kimpton Hotels and Resorts, Hualuxe, Crowne Plaza, Hotel Indigo, Holiday Inn and Candlewood Suites, to the general public.

31. Defendant's mobile application is offered by Defendant as a way for the public to communicate with IHG. Defendant's mobile app also permits the general public to locate hotels, sign up, make reservation, provides information, room description (pictures), directions and career jobs.

32. A mobile application (app) is a program that is downloaded and installed onto a user's mobile device, whereas a website is a site (place) on the internet where users visit it. The mobile application is saved on the smartphone, and in most cases an internet connection is optional in order to work. Both are ways of digital communication between the business and the users. A mobile app remains on the user's smartphone and is therefore ideal for frequent and repeated communication. Mobile app push notifications are small messages that pop up in

a user's status bar to let them know about an upcoming deal, reminders, and more. Push notifications are very convenient way successful way for business to reach and monetize their customers.

33. A blind person may give permission or consent to geolocation, push notifications and user's data sharing to third party if the mobile application is accessible to screen-reader (audio voice unable).

34. The mobile application is an integral part of the goods and services offered by Defendant's hotels, because Defendant's mobile app and its physical hotels are heavily integrated, since the mobile application allows the public the ability to locate Defendant's hotels and make a reservation.

35. The mobile application is an extension of defendant's physical hotels. By this nexus, between the hotels and the mobile application is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(A) of the ADA.

36. Defendant has control over its mobile application content, design and source-code. Defendant's mobile app has a nexus to a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(A). Therefore, under the ADA, Defendant must ensure that individuals with disabilities have access to full and equal enjoyment of the goods and services offered on its app.

37. Blind and visually impaired individuals may access mobile apps by using accessibility features in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a visually impaired person may independently use the internet. Unless the app is developed and designed with Accessibility

features to be accessed with screen reader software, visually impaired individuals are unable to fully access app and the information, products, and services available through the app.

38. There are specific guidelines in place endorsed by the US Department of Justice in numerous U.S. District Courts. (See DOJ letter September 25,2019 addressed to Congress). The international internet standards organization, W3C, has published WCAG 2.1 A (Web and mobile Content Accessibility Guidelines). WCAG 2.1 provides widely accepted guidelines for making mobile apps accessible to individuals with disabilities and compatible with screen reader software.

39. Plaintiff is legally blind and uses an Iphone that comes with "Voiceover" screen reader (audio) feature in order to access internet mobile applications' content. Plaintiff's software is the most popular screen reader software utilized worldwide by visually impaired individuals for mobile phones.

40. Despite attempts, Defendant's mobile app did not fully integrate with Plaintiff's mobile phone Accessibility screen-reader, nor was there any function within the app to permit access for visually impaired individuals through other means. Her shopping attempts were rendered futile because the app was inaccessible. Therefore, Plaintiff was denied the full use and enjoyment of the goods and services available on Defendant's app as a result of access barriers on the mobile app. For example: Banners, buttons, menu and images are not accessible; for example, the IHG app first page it announces "interact carrousel view"; Button Find a Hotel announces home screen_ btttn; menu categories have not understandable audio (when open the menu, cannot close back, because when using screen-reader the app does not allow to swipe to the left). Join Now fields have audio label but it is too many words (spam), instead should be First Name and not "join now underscore first name underscore accessibility

text field underscore double tap to edit". The reservation screen "Rooms", "Adults" and "Children" have no audio (no label), as well as increase or reduce number. The Menu icon on top left announces "hamburger". Each hotel has a page with information, price, and ability to book the hotel however the labels and audio is incorrect, thus blind user cannot receive the correct information. The IHG hotels mobile application is substantially inaccessible for blind persons. Defendant's mobile app performance recorded at https://youtu.be/p0772eJeyZo,https://youtu.be/dcx1czGuEfM,https://youtu.be/ALDAVRo7-lo.

41. Defendant's mobile application does not meet the WCAG 2.1 A level of accessibility. The mobile application should be accessible by screen reader audio voice. Multiple issues were found including: pop-up error is announced as "error" visually displayed message is not announced unless the blind user can find the small message box and click it to understand the issue, but the message box should be given focus and be automatically announced the entire message with Voiceover.

42. By failing to adequately design and program its mobile application to accurately and sufficiently integrate with mobile screen-readers, Defendant has discriminated against Plaintiff and others with visual impairments on the basis of a disability by denying them full and equal enjoyment of the app, in violation of 42 U.S.C. § 12182(a) and C.F.R. § 36.201.

43. As a result of Defendant's discrimination, Plaintiff was unable to use Defendant's mobile application to make a hotel reservation and suffered an injury in fact including loss of dignity, discrimination, and other tangible and intangible injuries.

46. The barriers on the mobile application have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's mobile app as defined by 42 U.S.C. §12181(7)(A); §12182, and 28 C.F.R. Part 36.

## **AMERICAN WITH DISABILITIES ACT**

44. The failure to access the information needed precluded Plaintiff's ability to patronize IHG hotels, because, as a blind individual, Plaintiff needs to plan her outings out in detail, locate the hotel, read about amenities and rooms for disables, make a reservation, in order to have the proper financing for a venture and ensure that she arrives at a given location (brick-mortar hotel).

45. Technology evolves, in these days, consumers are doing most of their shopping online. Defendant's provision of an e-commerce mobile application is an essential part of the hotel services offered and is no different than the customer service to the public as part of IHG's services, privileges and benefit to the public.

46. Title III ADA Part 36 regulation was amended to integrate section 36.303 Auxiliary Aids and Services "A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."

47. By this nexus, the Defendant's mobile application is characterized as an intangible service, privilege and advantage provided by IHG hotel's a Place of Public Accommodation as defined under the ADA, and thus its mobile application is an extension of IHG's services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar hotels.

48. All Public Accommodations must ensure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities. Binding case law increasingly recognize that private

entities are providing goods and services to the public through the mobile application that operate as "Places of Public Accommodation" under Title III.

49. Notice to Defendant is not required as a result of Defendant's failure to cure the violations.

50. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202 and Title III ADA Subpart E Section 36.501.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**
**Violation of Title III of the Americans with DisabilitiesAct42 U.S.C. § 12182, et seq.**

51. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by Public Accommodations and requires Places of Public Accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36 Regulation 28 C.F.R. § 36.303.

52. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities,…; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services... 42U.S.C. § 12182(b)(2)(A)(ii) (iii); see also 28 C.F.R. § 36.303(a).  Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations set forth numerous

examples of "auxiliary aids and services," including "…**accessible electronic and information technology**; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b), 42 U.S.C. § 12182(b)(2)(A)(III).

53. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is legally blind and has a disability that substantially limits the major life activity of seeing within the meaning of 42 U.S.C. §§12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's app. Plaintiff has not been afforded the same goods, services, privileges and advantages that are provided to other patrons who are not disabled. These violations are ongoing as Defendant has failed to make any prompt and equitable changes to its app and policies in order to remedy its discriminatory conduct.

54. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for injunctive relief is her only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

55. Defendant is in violation of the ADA by creating INTANGIBLE barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access digital mobile applications which are connected to physical stores, thus impeding access to physical stores. These violations are ongoing.

56. Plaintiff has retained the law office of Acacia Barros, Esq. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses

incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant IHG.

## SECOND CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794, et seq.

57. Plaintiff incorporates the foregoing allegations as if set forth fully herein.

58. Defendant received Federal financial assistance. In receiving a SBA PPP guaranteed loan, an institution is obligated and must certify that it will comply with several SBA regulations and Federal laws regarding civil rights/anti-discrimination laws until the loan is fully forgiven or repaid. As Defendant's operations are qualified programs or activities within the meaning of Section 504. 29 U.S.C. § 794(b)(4).

59. Section 504 of the Rehabilitation Act of 1973 ("Section 504") provides that otherwise qualified individuals with disabilities shall not, solely by reason of their disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

60. As an individual with an impaired vision disability, Plaintiff is a person with a disability within the meaning of Section 504. 29 U.S.C. § 794(a); 29U.S.C.§ 705(20) and is otherwise qualified to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) as well as incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights of 1964, 42. U.S.C. 2000d. 29 U.S.C. § 705(20)(B) (2000).

61. Defendant, the federal financial funded entity must afford disabled persons equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement, in the most integrated setting appropriate to the person's needs.  (34 CFR sec. 104.4(b)(2)).

62. The United States Small Business Administration ("SBA") and the Department of Treasury for Lender to make Paycheck Protection Program SBA-guaranteed financing available as part of the Coronavirus Aid, Relief, and Economic Securities Act ("CARES Act") (P.L. 116-136. The Defendant applied and received SBA PPP loan. The Defendant is a recipient of Federal financial assistance (13 CFR § 112.2 (b)) sufficient to invoke Section 504 coverage. 34 C.F.R. §104.3(h).

63. Section 504 regulations provides that recipients of Federal financial assistance, in providing any aid, benefit, or service, may not, on the basis of disability, discriminate against disabled person and requires facilities, programs and activities operated by the federally financial funded entity be readily accessible to persons with disabilities. 28 C.F.R § 42.520.

64. Defendant's mobile application is included as a programs or activity of Defendant's business hotels and the terms program or activity and program mean all of the operations of any entity described in paragraphs (e)(1) through (4) of this section, any part of which is extended Federal financial assistance: 13 CFR § 112.2( e ). An entire corporation, partnership, or other private organization, or an entire sole proprietorship. 13 CFR § 112.2( e )(3)(i).

65. Section 504 regulations further prohibit recipients of Federal financial assistance from limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving any aid, benefit, or service. 29 U.S.C. Section794(b)(3)(A).

66. Defendant has violated Section 504 by denying Plaintiff access to their digital platform (mobile application). Defendant's discriminates against blind users by tending to screen them out of having access to Defendant's digital platform content (mobile app), on the

basis of disability. Defendant provides its online platform as a service and benefit, a communication tool between users and Defendant business. Plaintiff was excluded from participation of Defendant's "program or activity".

67. To ensure that it protected a wide variety of persons, the Act focused on characteristics likely to lead to discrimination.17 An "individual with a disability" was any person "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such an impairment."

68. Defendant is fully aware that its digital platform content is inaccessible to visually impaired users. Defendant has intentionally failed to remediate the mobile application and make it equally accessible to persons with vision disabilities.

69. Defendant knew (certified in the SBA PPP loan application "I will comply with the civil rights") that not offering its online platform equally accessible to all users, Defendant discriminated against Plaintiff on the basis of her disability.

70. Plaintiff was excluded from participation in, and denied the benefits of the Defendant's digital platform, and subjected to discrimination, by Defendant who received under the Cares Act SBA PPP funding program Federal financial assistance.

71. Compensatory damages are available under Section 794a. (2)." The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) applied to claims of discrimination in compensation shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title". 29 U.S.C. §794a(2).

72. Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing violations, declaratory and injunctive relief are appropriate remedies pursuant to 29 U.S.C. §794a.

73. As a proximate result of Defendant's discrimination, Plaintiff has sustained injuries and has suffered segregation, isolation, experienced emotional suffering, pain and anxiety because of Defendant denied Plaintiff of participating and accessing Defendant's communication tool and online platform, which are available to all other users.

74. Plaintiff has no adequate remedy at law and unless the relief requested herein is granted, Plaintiff will suffer irreparable harm in that they will continue to be discriminated against and denied access to Defendant's benefits and services. Consequently, Plaintiff is entitled to injunctive relief, damages, as well as reasonable attorneys' fees and costs. 29 U.S.C. § 794a(a)(2) &(b)

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **Aishia Petersen** hereby prays judgment against Defendant IHG Management (Maryland) LLC. and requests the following injunctive relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services and goods, as well as the Court:

a. A Declaratory Judgment that <u>at the commencement</u> of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no

action that was reasonably calculated to ensure that its mobile application is fully accessible to, and independently usable by, blind individuals;

    b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2), and Section 504 of the Rehabilitation Act of 1973, and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to brings its app into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its app is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

    c. That the Court enter an Order directing Defendants to continually update and maintain their mobile application to ensure that it remains fully accessible to and usable by visually impaired individuals;

    d. Compensatory damages to Plaintiff under 29 U.S.C. §794 a (2), under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5).

    d. That the Court enter an award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and Title III of the ADA Section § 36.505, and 29 U.S.C. §794a(2)(b).

    e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated this 8th day of March 2021.

*s/Acacia Barros*
Attorney for Plaintiff
ACACIA BARROS, P.A.
Acacia Barros, Esq.
FBN: 106277
11120 N. Kendall Dr., Suite 201
Miami, Florida 33176
Tel: 305-639-8381
ab@barroslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March 2021 that the foregoing document has been filed using CM/ECF system and will be served via email when Defendant/Defendant's counsel enters an appearance.

*/s/Acacia Barros*
Attorney for Plaintiff
ACACIA BARROS, P.A.